Berger, Fischoff & Shumer, LLP
40 Crossways Park Drive
Woodbury, New York 11797
(516) 747-1136
Heath S. Berger, Esq.
*Attorney for Plaintiffs*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

Daniel A. Hesse,

                    Debtor
---------------------------------------------------------X
Ken Reid, John Nemick, Jim Buglion, Eileen
Buglion, Valerie Honett, Laura Morgan, Jeff
Kettler, Kim Kettler, Joe Biello, Nick Iorio,
Marian Iorio, Anthony Sce, Douglas Quimby,
Fred DeSanti and Charlotte DeSanti

       against

Daniel A. Hesse,

                    Defendant
---------------------------------------------------------X

Chapter 7
Case No.: 14-70196-ast

Adv. Pro. No.

## **COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF DEBT**

Plaintiffs, Ken Reid, John Nemick, Jim Buglion and Eileen Buglion, Valerie Honett,

Laura Morgan, Jeff Ketter and Kim Kettler, Joe Biello, Nick Iorio and Marian Iorio, Anthony

Sce, Douglas Quimby, Fred DeSanti and Charlotte DeSanti (collectively "Plaintiffs"), by their

attorneys, Berger, Fischoff & Shumer, LLP, complaining of the Defendant, Daniel A. Hesse,

allege as follows;

### **JURISDICTION AND VENUE**

1. Plaintiffs seek an order and judgment denying Daniel A. Hesse (the "Debtor"), a

    Discharge of his debt due and owing to the Plaintiffs.

2. This Court has jurisdiction of this adversary proceeding under Sections 157 and 1334 of Title 28 of the United States Code, 28 U.S.C. § 1, *et seq.* (the "Judiciary Code"), Section 523 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), and pursuant to the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Eastern District of New York.

3. This a core proceeding under § 157(b)(2)(1) of the Judiciary Code.

### THE PARTIES

4. The Plaintiffs are creditors of the Debtor in the above referenced Chapter 7 case.

5. At all times hereinafter mentioned, upon information and belief, the Debtor was and still is a resident in the State of New York.

### FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

6. Prior to the Debtor's bankruptcy filing, Plaintiffs loaned the Debtor and his son, George Hesse various sums of money.

7. The Debtor represented that the monies loaned to him and his son would be invested safely in real estate and could always be repaid in a short period of time.

8. The Debtor was a close friend and trusted business advisor of each of the Plaintiffs.

9. The nature of the Debtor's personal relationship with the Plaintiffs placed the Debtor in a unique situation, creating an implicit reliance by the Plaintiffs on the Debtor for his business acumen and his investment representations.

10. The personal relationship between the Plaintiffs and the Debtor allowed the Debtor to know the financial condition of the Plaintiffs.

11. To memorialize each loan to each of the Plaintiffs, the Debtor and G. Hesse executed and delivered to each of the Plaintiffs a separate promissory note.

12. The money loaned by the Plaintiffs to the Debtor was evidenced by the Note, which guaranteed returns of at least ten percent (10%) annually to the Plaintiffs, with the entire balance of the principal repayable on demand.

13. The Plaintiffs received a letter signed by the Debtor, under the letterhead of GDH Realty ("GDH") thanking them for investing in GDH and representing that the Note proceeds would only be invested in real estate and would be carefully monitored.

14. The Plaintiffs trusted and relied upon the Debtor's promise to invest in real estate and to carefully monitor the investments.

15. The Plaintiffs began receiving quarterly payments related on their investments, however, such quarterly payments eventually stopped.

16. Plaintiffs had occasion to meet with Debtor and were continually advised that their loans were invested only in real estate, was extremely safe and constantly monitored.

17. Debtor always discouraged Plaintiffs from seeking a return of their investments on the grounds that it was safely invested in real estate.

18. Debtor breached the terms of the Note by failing to pay quarterly payments required under the terms of the Note.

19. During the period immediately following the breach, the Debtor continued to represent that GDH had assets sufficient to pay the monies Debtor owed Plaintiffs and that Plaintiff's investment was safe.

20. The Debtors continued representations that Plaintiff's investment was safe were

knowingly false and misleading.

21. The Debtor failed to pay quarterly payments when due and failed to repay the loan principal.

22. The Debtor used the funds loaned him by the Plaintiffs and others, for his own personal use.

23. The Debtor failed to keep any accurate records reflecting amounts owed the Plaintiffs and the real estate, if any, in which Plaintiff's loans, or the proceeds thereof, were invested.

24. The Debtor utilized GDH, his property investment vehicle, as his own personal pocketbook, comingling the Plaintiff's loans, and the proceeds thereof with other funds and utilized those funds for his own benefit.

25. By failing to keep accurate books and records of monies loaned by the Plaintiffs, and others, and comingling various loans to GDH, as well as fraudulent conveyances of GDH properties and money, Debtor was able to defraud Plaintiffs.

26. Debtor and G. Hesse operated GDH as Ponzi scheme to defraud Plaintiffs.

**FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – KEN REID**

27. On or about October 1, 2005 Plaintiff Ken Reid loaned Debtor and his son $200,000 pursuant to the terms of a Promissory Note. As part of the terms of the Promissory Note, until repayment of the principal was demanded, the Debtor was to pay quarterly installments of interest only at a fixed rate of 10% per annum commencing January 1, 2006. In or about January 1, 2012, the Debtor failed to make the quarterly interest payment and thus is in default of the terms of the

Promissory Note. Thereafter, Mr. Reid commenced an action against Debtor in the Supreme Court of the State of New York, County of Suffolk. In resolution of said action, on March 1, 2013, the Debtor executed an Affidavit of Confession of Judgment in favor of Mr. Reid in the sum of $157,255.65 plus costs and disbursements, none of which has been paid.

**FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – JOHN NEMICK**

28. On or about November 2002 Plaintiff John Nemick loaned Debtor and his son $345,000. Pursuant to the terms of the agreement with Debtor, Mr. Nemick was to receive interest only quarterly interest payments at the rate of 10% per annum until the principal was paid in full. The Debtor has defaulted in payment of quarterly interest, as well as failed to repay the principal. As of January 19, 2014, the amount due from the Debtor to Mr. Nemick is $414,245.88, which is broken down as follows: $345,000 principal amount due; $65,795.88 interest due through January 19, 2014; and $3,450 late charges, none of which has been paid.

**FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF JIM BUGLION & EILEEN BUGLION**

29. Pursuant to an agreement, Plaintiff Jim Buglion and Eileen Buglion loaned Debtor and his son a sum certain. The Debtor defaulted in the terms of the agreement with Mr. Buglion by failing to make interest payments and repay the principal of the loan. Thereafter Mr. & Mrs. Buglion commenced an action against the Debtor in the Supreme Court of the State of New York, County of Suffolk. On July 11, 2013, in resolution of the Supreme Court action, Mr. Buglion and his wife, Eileen Buglion, obtained a Judgment against the Debtor in the sum of $576,529.37 with interest from July 11, 2013, none of which has been paid.

**FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – VALERIE HONNETT**

30.  Pursuant to an agreement, Plaintiff Valerie Honnett loaned Debtor and his son the sum of $214,000.00. The Debtor is in default of the terms of the agreement with Ms. Honnett by failing to repay the principal of the loan, as well as 10% interest from September 1, 2013, none of which has been paid.

**FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – LAURA MORGAN**

31. On or about January 4, 2010 Plaintiff Laura Morgan loaned Debtor and his son $500,000.00 pursuant to the terms of a Promissory Note.  As part of the terms of the Promissory Note, until repayment of the principal was demanded, the Debtor was to to pay quarterly installments of interest only at a fixed rate of 10% per annum commencing April 1, 2010.

32. On or about January 1, 2011, Plaintiff Laura Morgan loaned Debtor and his son $300,000.00 pursuant to the terms of a Promissory Note.  As part of the terms of the Promissory Note, until repayment of the principal was demanded, the Debtor was to pay quarterly installments of interest only at a fixed rate of 10% per annum commencing January 1, 2011.

33. The Debtor has defaulted in payment of quarterly interest, as well as failed to repay the principal upon due demand.  As of March 25, 2014, the amount due from the Debtor to Ms. Morgan is $877,368.50, including attorney fees as provided in the promissory notes, none of which has been paid.

**FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF –**

**JEFF & KIM KETTLER**

34. Pursuant to an agreement, Plaintiffs Valerie Jeff Kettler and Kim Kettler loaned Debtor and his son the sum of $360,000.00. The Debtor is in default of the terms of the agreement with Ms. Honnett by failing to repay the principal of the loan, as well as 10% interest thereon.

## FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – JOE BIELLO

35. Pursuant to an agreement, Plaintiff Joe Biello loaned Debtor and his son the sum of $145,000.00. The Debtor is in default of the terms of the agreement with Mr. Biello by failing to repay the principal of the loan, as well as 10% interest thereon.

## FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – NICK IORIO & MARIAN IORIO

36. On or about May 1, 2010, Plaintiffs Nicholas Iorio and Marian Iorio loaned Debtor and his son $100,000. Evidencing such loan was a promissory note executed by the Debtor in the principal sum of $100,000 plus interest at 10% per annum. That upon written notice dated July 13, 2012 to Debtor from plaintiffs pursuant to the terms of the promissory note, the plaintiffs elected to declare payment of the principal sum of $100,000 due based upon the Debtors default in making timely interest payments. Plaintiffs thereafter brought an action against Debtor in the Supreme Court of New York, County of Suffolk and on December 3, 2012 a Judgment was entered against the Debtor in the sum of $102,990.00, none of which has been paid.

## FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – ANTHONY SCE

37. On or about June 2006, Plaintiff Anthony Sce loaned Debtor and his son $500,000. Pursuant to the terms of the agreement with Debtor, Mr. Sce was to

receive interest only quarterly interest payments at the rate of 14% per annum until the principal was paid in full. The Debtor has defaulted in payment of quarterly interest, as well as failed to repay the principal. As of April 1, 2014, the amount due from the Debtor is $675,000, none of which has been paid.

## FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – DOUGLAS QUIMBY

38. Pursuant to an agreement, Plaintiff Douglas Quimby loaned Debtor and his son the sum of $90,000.00. The Debtor is in default of the terms of the agreement with Mr. Quimby by failing to repay the full principal of the loan, as well as 10% interest thereon. As of March 28, 2014, the amount due from the Debtor is $55,000, none of which has been paid.

## FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF – FRED DESANTI AND CHARLOTTE DESANTI

39. On or about October 1, 2005 Plaintiffs Fred Desanti and Charlotte DeSanti loaned Debtor and his son $400,000 pursuant to the terms of a Promissory Note. As part of the terms of the Promissory Note, until repayment of the principal was demanded, the Debtor was to to pay quarterly installments of interest only at a fixed rate of 10% per annum commencing January 1, 2006.

40. On or about November 1, 2005 Plaintiff Fred Desanti loaned Debtor and his son $300,000 pursuant to the terms of a Promissory Note. As part of the terms of the Promissory Note, until repayment of the principal was demanded, the Debtor was to  pay quarterly installments of interest only at a fixed rate of 10% per annum commencing January 1, 2006.

41. In or about October 1, 2011, the Debtor failed to make the quarterly interest payment and thus is in default of the terms of the Promissory Notes. Thereafter,

Mr. Desanti commenced an action against Debtor in the Supreme Court of the State of New York, County of Suffolk. In resolution of said action, on February 21, 2013, the Debtor executed an Affidavit of Confession of Judgment in favor of Mr. Desanti and the Judgment was filed with the Clerk of Suffolk County on February 25, 2013 in the sum of $605,144.59 plus interest, none of which has been paid.

## AS AN FOR A FIRST CLAIM FOR RELIEF
## AGAINST DEBTOR UNDER 11 U.S.C. §523(a)(2)(A)

42. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 41 of this complaint as if each were fully set forth herein.

43. The Debt to each Plaintiff constitutes money, property or an extension or renewal or refinance of credit.

44. The Debt was incurred under false pretense, false representations and/or actual fraud.

45. The Debtor never accounted for the money the Plaintiffs loaned him, nor did he invest the money in its intended purpose.

46. The Debtor used his relationship with the Plaintiffs to obtain the funds and lull them into a false sense of security regarding the nature of the investments.

47. In addition, the Debtor engaged in conscious, deceptive and misleading conduct calculated to obtain, or deprive the Plaintiffs of their ability to obtain repayment of the money.

48. Debtor knowingly conspired to defraud the Plaintiffs by issuing the Note to the

Plaintiffs in his individual capacity while creating a corporate entity, GDH, to funnel and commingle funds through, and operating GDH as a Ponzi scheme for his own benefit.

49. Plaintiffs have sustained damages as a proximate result of the Debtor's conduct.

50. Debtor's acts constitute false representation and/or actual fraud and/or the use of false Pretenses in order to obtain funds, property, or an extension, renewal or refinance of credit for his real estate investment business and therefore the Debt is not dischargable by virtue of 11 U.S.C. § 523 (a)(2)(A).

## AS AND FOR A SECOND CLAIM FOR RELIEF
## AGAINST DEBTOR UNDER 11 U.S.C. §523 (a)(4)

51. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 50 of this complaint as if each were fully set forth herein.

52. At all times referenced, the Debtor acted as a fiduciary to Plaintiffs.

53. Debtor knew that Plaintiffs were not sophisticated investors, Debtor represented that the investments were safe.

54. By comingling Plaintiffs' investment, and the proceeds thereof, with other monies and/or property of GDH and, operating GDH as Ponzi scheme and utilizing GDH as his own personal pocketbook and, fraudulently transferring assets of GDH to himself and others, Debtor defrauded Plaintiffs.

55. The Debtor, upon information and belief, knew or had reason to know that the money would not be repaid to the Plaintiffs.

56. The Debtor represented falsely that Plaintiffs' money was used to invest solely in real estate of GDH.

57. The Debtor, on information and belief, embezzled and/or defalcated funds of the

Plaintiffs, which were otherwise owed to the plaintiffs, for his own individual use and purposes.

58. The Plaintiffs have sustained damages as a proximate result of the Debtor's conduct.

59. As a result of the foregoing, the Debt is not dischargeable by virtue of 11 U.S.C. § 523(a)(4).

### AS AND FOR A THIRD CLAIM FOR RELIEF
### AGAINST DEBTOR UNDER 11 U.S.C. §523(a)(2)(B)

60. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 59 of this complaint as if each were fully set forth herein.

61. Debtor provided materially false written information regarding the nature of the use of the Plaintiffs money, and the Debtor's financial condition, including, without limitation, materially false statements regarding the Debtor's real estate investment business.

62. The Plaintiff's reasonably relied on the information provided by the Debtor in lending funds to the Debtor.

63. The Debtor caused to be made and/or published such false information to Plaintiffs with the intent to deceive Plaintiffs.

64. Plaintiffs have sustained damages as a proximate result of the Debtor's conduct.

65. As a result of the foregoing, the Debt is not dischargeable by virtue of 11 U.S.C. §523(a)(2)(B).

### AS AND FOR A FOURTH CLAIM FOR RELIEF
### AGAINST DEBTOR UNDER 11 U.S.C. §523(a)(6)

66. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 of this complaint as if each were fully set forth herein.

67. By operating GDH as a Ponzi scheme, Debtor has engaged in intentional, willful and malicious conduct designed to injure the Plaintiffs.

68. Debtor's intentional, willful and malicious conduct has in fact damaged Plaintiffs.

69. By virtue of the foregoing, Debtor's actions constitute a willful and malicious injury by the Debtor to the Plaintiffs and, accordingly, the Debt is not dischargeable by virtue of 11 U.S.C. §523(a)(6).

**WHEREFORE**, the Plaintiffs respectfully request that the Debtor be denied a discharge of the Debt.

Dated: Woodbury, New York
            _____, 2015

                                       BERGER, FISCHOFF & SHUMER, LLP

                                       BY: _____
                                            Heath S. Berger, Esq.
                                          40 Crossways Park Drive
                                          Woodbury, New York 11797
                                          (516) 747-1136
                                          Attorneys for Creditors

F:\docs\Hesse, Daniel\Complaint Objecting to Dischargeability.docx

67. By operating GDH as a Ponzi scheme, Debtor has engaged in intentional, willful and malicious conduct designed to injure the Plaintiffs.

68. Debtor's intentional, willful and malicious conduct has in fact damaged Plaintiffs.

69. By virtue of the foregoing, Debtor's actions constitute a willful and malicious injury by the Debtor to the Plaintiffs and, accordingly, the Debt is not dischargeable by virtue of 11 U.S.C. §523(a)(6).

**WHEREFORE**, the Plaintiffs respectfully request that the Debtor be denied a discharge of the Debt.

Dated: Woodbury, New York
7/30          , 2015

BERGER, FISCHOFF & SHUMER, LLP

BY: _____
Heath S. Berger, Esq.
40 Crossways Park Drive
Woodbury, New York 11797
(516) 747-1136
Attorneys for Creditors

F:\docs\Hesse, Daniel\Complaint Objecting to Dischargeability.docx